❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 23-970M(NJ) |
| Records and Information about the location of the cellular | ) | Matter No. 2022R00524 |
| telephone assigned call number 414-712-0185, (the "Target | ) | |
| Cell Phone"), whose service provider is AT&T as further | ) | |
| described in Attachment A | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before August 10, 2023_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
                                                                                                              *(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 7/27/2023 @ 2:45 p.m. _____

_____ *Judge's signature*

City and state:  Milwaukee, Wisconsin _____     Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R524**

1.       Records and information associated with the cellular devices assigned call numbers **414-712-0185** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 11760 US Highway 1, Suite 300 North Palm Beach, FL 33408.

2.       Information about the location of Target Cell Phone, that is within the possession, custody, or control of AT&T.

3.       The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number**

## I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from November 2022, to present:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 2

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.   All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b.   Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i.   Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

Page 3

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or

with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Noel R. LOZANO and other identified and unidentified subjects during the period of November 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information about the location of the cellular telephone assigned<br>call number 414-712-0185, (the "Target Cell Phone"), whose<br>service provider is AT&T as further described in Attachment A | Case No. 23-970M (NJ)<br><br>Matter No. 2022R00524 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Distribution and possession with intent to distribute controlled substances;<br>conspiracy to distribute and possess with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI TFO Brian T. Zangl
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 7/27/2023

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter Number 2022R524**

I, Brian T. Zangl, a Task Force Officer (TFO) with the Federal Bureau of Investigation's Milwaukee Area Safe Streets Task Force (MASSTF), being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **414-712-0185**, (the "Target Cell Phone"), with service provider AT&T ("Service Provider") a wireless telephone service provider headquartered at 11760 US Highway 1, Suite 300 North Palm Beach, FL 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen

Page 1

registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.      I am a State of Wisconsin certified law enforcement officer, employed as an Investigator with the Oak Creek Police Department, and has been a sworn law enforcement officer in the State of Wisconsin for approximately 9 years. I am currently assigned to the Federal Bureau of Investigation's Milwaukee Area Safe Streets Task Force (MASSTF), as a federally deputized Task Force Officer (TFO). Affiant is also federally deputized by the USMS. As such, affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that affiant is empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5.      I have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

6.      More specifically, my training and experience includes the following:

a.      I have used informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, affiant has learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.      I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.      I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

Page 2

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, fentanyl, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. Affiant knows the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment, to include but not limited to wireless and land line telephones to conduct drug trafficking operations;

g.     I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.     I have been assigned to court-authorized wiretaps and has been trained to operate the equipment utilized to conduct such operations;

i.     I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.     I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, firearms, and jewelry.  Affiant also knows that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

7.     I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

Page 3

8.      The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Noel R. LOZANO (02/01/1984) and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.     JURISDICTION

10.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## III.    PROBABLE CAUSE

11.     The Federal Bureau of Investigation (FBI), MASSTF, and local law enforcement have been investigating Noel R. LOZANO, David N. SCHLOSSER and other identified and unidentified persons involved with a drug trafficking organization (DTO).  Since approximately September 2021 the DTO has been transporting methamphetamines through numerous counties of Wisconsin including, Milwaukee County; Waukesha County; and Washington County. The investigation to date has included traditional law enforcement methods, including, but not limited

to: interviews with confidential sources and sources of information; information gathered from other law enforcement officers; documentary evidence; telephone toll data; controlled drug evidence purchases, controlled meetings with targets, recorded telephone calls with targets, and controlled payments of money; and physical surveillance.

12.     As part of the investigation into the DTO, case agents were made aware that SCHLOSSER who is located in West Bend, Wisconsin obtains controlled substances from LOZANO.  LOZANO uses a variety of communication applications to distribute narcotics including Facebook and conventional cellular telephone text messaging and talk.  Several other members of SCHLOSSER's DTO have been identified which include Andrew TRINKL, Tim LILLEY, Sharon WEIMER, and David Jakob KOENIG.

**A.  Criminal History**

13.     On February 7, 2021, case agents queried law enforcement databases regarding LOZANO criminal history.  LOZANO has the following criminal arrests:

a)  May 25, 2004, arrest by Milwaukee County Sheriff for first manufacture/deliver THC (<=200 Grams);
b)  July 11, 2003, arrest by Wauwatosa Police Department for disorderly conduct;
c)  September 28, 2003, arrest by Washington County Sheriff for resisting or obstructing an officer, possession of THC, and possess drug paraphernalia;
d)  April 27, 2004, arrest by Washington County Sheriff for operating while revoked and possess drug paraphernalia;
e)  February 12, 2008, arrest by Milwaukee Police Department for theft-movable property and battery;
f)  January 19, 2009, arrest by Milwaukee Police Department for possession with intent to deliver cocaine (>5-15g) -second/subsequent drug offense, maintain a drug trafficking place, possession with intent to deliver THC (>200grams-1000grams) – second/subsequent drug offense, and possession with intent to deliver narcotics;
g)  October 10, 2016, arrest by Greenfield Police Department for possession/attempt to possess methamphetamines, possession of drug paraphernalia, possession of cocaine/coca, possession of Schedule I and II

Page 5

narcotic drugs;

    h) November 14, 2016, arrest by West Milwaukee Police Department for possession of cocaine/coca, possession of THC, and possession with intent to deliver cocaine (>5-15g);

    i) May 7, 2017, arrest by St. Francis Police Department for receiving stolen property >$5000-$10,000;

    j) August 5, 2017, arrest by Racine County Sheriff for possession of cocaine/coca, possession of drug paraphernalia, and felony bail jumping;

    k) January 31, 2018, arrest by Wauwatosa Police Department for hit and run, and resisting or obstructing an officer;

    l) March 8, 2018, arrest by Milwaukee Police Department for possession with intent to deliver cocaine (<=1g);

    m) June 6, 2018, arrest by Milwaukee County Sheriff for receiving stolen property >$5000-$10,000; and

    n) January 8, 2020, arrest by Milwaukee County Sheriff for possession with intent to deliver cocaine (>5-15g).

**B. Controlled Buys**

14. As part of the investigation into the DTO, case agents have used a Confidential Human Source ("CHS"). CHS has contacted or was contacted by 414-399-4183 and **414-712-0185** (Target Cell Phone) to conduct the purchase of methamphetamine. CHS received a price for the requested amount of methamphetamine and a meeting location for the delivery of methamphetamine from the 414-399-4183 and the Target Cell Phone.

15. During the below listed controlled buys of controlled substances the CHS placed a recorded phone call to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance and the target was identified by the CHS through photographs.

Page 6

### a. First Controlled Drug Buy – January 17, 2023

16.     On January 17, 2023, at the direction of case agents, CHS set up a controlled buy of methamphetamine from Noel LOZANO using telephone 414-399-4183.  LOZANO and CHS agreed to meet in the area of Fond du Lac Avenue and West Mill Road, Milwaukee, Wisconsin. CHS drove to the location and met with LOZANO.    LOZANO provided suspected methamphetamine to CHS in exchange for US currency.  Law enforcement observed LOZANO operating a red 2013 Acura TSX, bearing State of Wisconsin license plate APU-8612, to the designated drug purchase location. Law enforcement conducted a Wisconsin Department of Transportation record check of Wisconsin license plate APU-8612, with a registered owner of Christina VORPAGEL.  Law enforcement knows that VORPAGEL is the girlfriend of LOZANO. After the transaction, CHS met with case agents and turned over the suspected methamphetamine. The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and also with NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive.  The weight of the methamphetamine was 10.3 grams.  The methamphetamine was packaged and placed into evidence.

17.     Prior to the controlled drug buy on January 17, 2023, case agents were conducting surveillance of 6523 North Fresno Street, Milwaukee, WI 53224-5348, which was believed to be an address associated with LOZANO.  Case agents observed LOZANO exit 6523 North Fresno Street, Milwaukee, WI 53224-5348 and travel to the location where the controlled buy occurred with CHS.

### b. Second Controlled Drug Buy – January 26, 2023

18.     On January 26, 2023, under the supervision of case agents, CHS set up a controlled buy of methamphetamine from LOZANO using telephone 414-399-4183. CHS met with target

LOZANO near US45/Good Hope Road in Milwaukee County. LOZANO provided suspected methamphetamine to CHS in exchange for US currency. Law Enforcement observed LOZANO operating a red 2013 Acura TSX, bearing State of Wisconsin license plate APU-8612, to the designated drug purchase location. After the transaction, CHS met with case agents and turned over the methamphetamine. The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive. The methamphetamine weighted 5.93 grams. The methamphetamine was packaged and placed into evidence.

### c. Third Controlled Drug Buy – February 9, 2023

19.     On February 9, 2023, under the supervision of case agents, CHS set up a controlled buy of methamphetamine with LOZANO. CHS contacted Lozano at telephone number 414-399-4183. This transaction was set up with both telephone calls and text messages. CHS and LOZANO met in the area of North 104th Street and West Mill Road in Milwaukee, Wisconsin to conduct the transaction. LOZANO provided CHS with the suspected methamphetamine in exchange for US Currency. During this controlled buy, case agents observed Noel LOZANO driving a maroon Honda CR-V with Wisconsin license plate AMW-3092 (Honda CR-V). After the transaction, CHS met with case agents and turned over the suspected methamphetamine. The total weigh was 6.81grams. The drugs were tested with NARTEC METH-1 Methamphetamine/MDMA and NARTEC AMPHETAMINE/OPIATES Marquis Reagent test kits. Both tests were positive for methamphetamine. The methamphetamine was packaged and placed into evidence.

### d. Fourth Controlled Drug Purchase – February 24, 2023

20.     On February 24, 2023, under the supervision of case agents CHS set up a controlled

Page 8

buy of methamphetamine with LOZANO. CHS contacted LOZANO at telephone number 414-399-4183. This transaction was set up by voice communication. CHS was instructed by LOZANO to meet in the area of North 89th Street and West Mill Road area in Milwaukee, Wisconsin. CHS met with LOZANO and exchanged US Currency for suspected methamphetamine. Law enforcement observed LOZANO conduct the drug transaction on foot, in the 8900 block of West Mill Road Milwaukee, Wisconsin. Law enforcement knows that Noel LOZANO has a listed address of 6523 North Fresno Street Milwaukee, Wisconsin. Law enforcement has observed the red 2013 Acura TSX, bearing State of Wisconsin license plate APU-8612 and the Honda CR-V parked in the 6500 block of North Fresno Street Milwaukee, Wisconsin. After the transaction CHS met with case agents and turned over the illegal drugs. The weight was 6.9 grams. The drugs were tested with a NARC II Methamphetamine/MDMA test kit. The test result was positive for methamphetamine. The methamphetamine was packaged and placed into evidence.

### e. Fifth Controlled Drug Purchase – March 15, 2023

21.     On March 15, 2023, under the supervision of case agents CHS contacted LOZANO on telephone number 414-399-4183 to set up a controlled purchase of methamphetamine using text and voice. CHS was instructed by LOZANO to go to the area of North 91st Street and West Good Hope Road in Milwaukee, Wisconsin. CHS was then instructed by LOZANO to go to the area of West Good Hope Road in the area of North 76th Street. CHS met with LOZANO and exchanged US Currency for suspected methamphetamine. Law enforcement observed LOZANO drive in the Honda CR-V to the designated meet location and leave in the Honda CR-V after the controlled buy was completed. After the transaction, CHS met with case agents and turned over the illegal drugs. The weight of the drug was 6.22 grams. The drugs were tested with NARTEC METH-1 Methamphetamine/MDMA and NARTEC AMPHETAMINE/OPIATES Marquis

Page 9

Reagent test kits. Both tests were positive for methamphetamine. The methamphetamine was packaged and placed into evidence.

### f. Sixth Controlled Drug Purchase – April 7, 2023

22. On April 7, 2023, under the supervision of case agents CHS contacted LOZANO on telephone number 414-399-4183 to set up a controlled purchase of methamphetamine using text and voice. CHS was instructed by LOZANO to go to Fond du Lac Super Foods, located at 10212 West Fond du Lac Avenue Milwaukee, Wisconsin. CHS met with LOZANO and exchanged US Currency for suspected methamphetamine. Law enforcement observed LOZANO drive in the Honda CR-V to the designated meet location and leave in the Honda CR-V after the controlled buy was completed. After the transaction, CHS met with case agents and turned over the illegal drugs. The weight of the drug was 10.02 grams. The drugs were tested with NARTEC METH-1 Methamphetamine/MDMA and NARTEC AMPHETAMINE/OPIATES Marquis Reagent test kits. Both tests were positive for methamphetamine. The methamphetamine was packaged and placed into evidence.

### g. Seventh Controlled Drug Purchase – June 9, 2023

23. On June 9, 2023, under the supervision of case agents CHS contacted LOZANO on telephone number 414-399-4183 to set up a controlled purchase of methamphetamine using text and voice. CHS was instructed by LOZANO to go to Speedway Gas Station located at 9200 West Bluemound Road Milwaukee, Wisconsin. CHS met with LOZANO and was directed to follow LOZANO. CHS stopped with LOZANO on North 91st Street, north of Bluemound Road, in Milwaukee, Wisconsin, and exchanged US Currency for suspected methamphetamine. Law enforcement observed LOZANO drive in the Honda CR-V (with no license plates affixed) to the designated meet location and leave in the Honda CR-V after the controlled buy was completed.

Page 10

After the transaction, CHS met with case agents and turned over the illegal drugs. The weight of the drug was 10.43 grams. The drugs were tested with NARTEC METH-1 Methamphetamine/MDMA and NARTEC AMPHETAMINE/OPIATES Marquis Reagent test kits. Both tests were positive for methamphetamine. The methamphetamine was packaged and placed into evidence.

### e. Eighth Controlled Drug Purchase – July 20, 2023

24.     On July 20, 2023, under the supervision of case agents, CHS contacted LOZANO on the Target Cell Phone to set up a controlled purchase of methamphetamine using text and voice. CHS was instructed by LOZANO to go to the Mobil Gas Station located at 9622 West Fond du Lac Avenue, Milwaukee, Wisconsin. Law enforcement observed LOZANO drive in the Honda CR-V (with no license plates affixed) to the designated meet location. CHS arrived at the location and parked within the parking lot of the business. Law enforcement observed the Honda CR-V, with LOZANO, parked at the gas pumps. LOZANO walked up to the CI's passenger side of the vehicle and completed the drug transaction. LOZANO returned to the Honda CR-V after the drug transaction and left the area in the Honda CR-V.

25.     After the transaction, CHS met with case agents and turned over the illegal drugs. The weight of the drug was 9.04 grams. The drugs were tested with Narc Pouch#15 Methamphetamine/MDMA Reagent and Narc Pouch#1 Amphetamine/Methamphetamine Marquis Reagent test kits. Both tests were positive for methamphetamine. The methamphetamine was packaged and placed into evidence.

### C. CHS Information

26.     On March 15, 2023, case agents were debriefing with CHS regarding the controlled buy from that day. During this meeting case agent learned CHS, while not under the supervision

of law enforcement, obtained a clozapine and razapine from an individual. CHS reached out to LOZANO in order to sell the substances and obtain money. On March 9, 2023, CHS meet with LOZANO and exchanged the controlled substance for four ecstasy pills and $150. CHS then consumed two of the ecstasy pills and threw the remining pills out. CHS then used the money to make a car insurance payment. Case agents later reviewed electronic communication and court authorized electronic surveillance of LOZANO and verified all this information. CHS was admonished by law enforcement.

27.     CHS's information is credible and reliable regardless of the unauthorized meeting with LOZANO on March 9, 2023. CHS has provided information to certified Wisconsin law enforcement in the past, pertaining to individuals involved in illegal activities, which have been independently verified. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. This includes the controlled buys and communication with LOZANO outlined above. CHS has a past criminal history including arrest for drugs, theft, child neglect and operating a vehicle while impaired offenses. CHS has cooperated with law enforcement in exchange for consideration on a state felony drug charge and CHS is also receiving monetary compensation for services rendered.

## IV.     TECHNICAL INFORMATION AND BACKGROUND

28.     On July 26, 2023, case agents queried **414-712-0185** (Target Cell Phone) via a law enforcement databased, which identified a mobile carrier as AT&T. Further the law enforcement data based indicated **414-712-0185** (Target Cell Phone) does not have a listed subscriber.

29.     I believe the Target Cell Phone, whose service provider is AT&T ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on

this account that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846.

30.     Based on my training and experience, I know that the Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

**A. Cell-Site Data**

31.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

32.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service

Page 13

provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

33.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

34.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

35.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary

estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

36.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

37.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**C. Pen-Trap Data**

38.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique

Page 15

identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

39.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

40.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone' user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Noel R. LOZANO, and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Noel R. LOZANO, and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope

of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V.       AUTHORIZATION REQUEST

41.       Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

42.       I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

43.       I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.   The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

44.       Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R524**

1.      Records and information associated with the cellular devices assigned call numbers **414-712-0185** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 11760 US Highway 1, Suite 300 North Palm Beach, FL 33408.

2.      Information about the location of Target Cell Phone, that is within the possession, custody, or control of AT&T.

3.      The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number**

### I.    Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from November 2022, to present:

        i.   Names (including subscriber names, usernames, and screen names);

        ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.   Local and long-distance telephone connection records;

        iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.   Length of service (including start date) and types of service utilized;

        vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 2

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

Page 3

ii.  Source and destination telephone numbers;

iii.  Date, time, and duration of communication; and

iv.  All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c.  Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or

Page 4

with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Noel R. LOZANO and other identified and unidentified subjects during the period of November 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.